PETERSON, Judge
In this appeal from an order granting respondent automobile insurer's motion to vacate an arbitration award, the parties dispute whether appellant insured, who was injured in a motor-vehicle accident in the course of her employment, is entitled *872 to basic economic loss benefits for chiropractic treatment that she received for the injury after her employer's workers' compensation insurer determined that additional chiropractic treatment was excessive. We reverse.
FACTS
While driving a school bus for her employer, appellant Jennifer Rodriguez was injured when a stolen vehicle crashed into the bus. Old Republic Insurance Company, her employer's workers' compensation insurer, paid for 12 weeks of chiropractic treatment that Rodriguez received at ChiroFirst, P.A. Old Republic then notified ChiroFirst that, because additional chiropractic treatment was not indicated under the treatment parameters set forth in Minn. R. 5221.6200, subp. 3(A) (2017), it would not pay for additional treatment, except as permitted under Minn. R. 5221.6200, subp. 3(B) (2017). In response, ChiroFirst refused to provide additional treatment.
Rodriguez then began receiving chiropractic treatment from Core Health Chiropractic and provided notice of an uninsured-motorist claim to her personal automobile insurer, respondent State Farm Mutual Automobile Insurance Co. Because it appeared to State Farm that Rodriguez was in the course and scope of her employment when she was injured, State Farm sought information about Rodriguez's injuries and treatment and about what benefits she was requesting under her automobile policy. Rodriguez responded that she was claiming no-fault benefits for her chiropractic treatment, and she requested an application for benefits.
After State Farm failed to pay Rodriguez's bills for chiropractic treatment, Rodriguez filed a petition for no-fault arbitration. During arbitration, State Farm did not dispute the reasonableness or the necessity of the chiropractic treatment that Rodriguez received, but argued that, under the circumstances of this case, the workers' compensation system is the exclusive source for any health care benefits sought in connection with the accident. The arbitrator ruled for Rodriguez and awarded her the full amount claimed, plus costs and interest.
State Farm brought a motion in the district court to vacate the arbitrator's award on the ground that the arbitrator exceeded her authority. The district court concluded that the plain language of Minn. Stat. § 176.83, subd. 5(c) (2016), precluded no-fault benefits. Based on this conclusion, the district court granted State Farm's motion to vacate. This appeal followed.[1]
ISSUE
Does Minn. Stat. § 176.83, subd. 5(c), relieve an insurer of its obligation to pay no-fault benefits to an insured who was injured in the course and scope of her employment when there has been no determination by the commissioner of labor and industry or a compensation judge whether the insured is entitled to receive workers' compensation benefits for treatment of the injury?
ANALYSIS
An arbitrator's findings of fact are final. Johnson v. American Family Mut. Ins. Co. , 426 N.W.2d 419, 421 (Minn. 1988). But, "[t]o achieve the consistency desired in interpreting the no-fault act, [appellate] court[s] and the district court review de novo the arbitrator's legal determinations necessary to granting relief."
*873 Weaver v. State Farm Ins. Cos. , 609 N.W.2d 878, 882 (Minn. 2000).
The Minnesota Workers' Compensation Act states:
[T]he commissioner [of labor and industry] shall adopt rules establishing standards and procedures for health care provider treatment. ... The rules shall be used to determine whether a provider of health care services and rehabilitation services, including a provider of medical, chiropractic, podiatric, surgical, hospital, or other services, is performing procedures or providing services at a level or with a frequency that is excessive, unnecessary, or inappropriate under section 176.135, subdivision 1, based upon accepted medical standards for quality health care and accepted rehabilitation standards.
Minn. Stat. § 176.83, subd. 5(a) (2016).
In accordance with this statutory directive, the commissioner adopted rules that set forth treatment parameters for various health care services, including treatment of low-back pain. Minn. R. 5221.6200, subp. 3 (2017). Under these rules, chiropractic treatment is generally limited to 12 weeks of treatment. Minn. R. 5221.6200, subp. 3(A). But additional treatment beyond 12 weeks may be provided if certain conditions are met. Minn. R. 5221.6200, subp. 3(B). There has been no determination whether the conditions for additional treatment of Rodriguez's injury beyond 12 weeks have been met, and Old Republic cited this 12-week limit as the reason why it would not pay for additional chiropractic treatment, except as permitted under Minn. R. 5221.6200, subp. 3(B).
The workers' compensation act also provides:
If it is determined by the payer that the level, frequency, or cost of a procedure or service of a provider is excessive, unnecessary, or inappropriate according to the standards established by the rules, the provider shall not be paid for the procedure, service, or cost by an insurer, self-insurer, or group self-insurer, and the provider shall not be reimbursed or attempt to collect reimbursement for the procedure, service, or cost from any other source, including the employee, another insurer , the special compensation fund, or any government program unless the commissioner or compensation judge determines at a hearing or administrative conference that the level, frequency, or cost was not excessive under the rules in which case the insurer, self-insurer, or group self-insurer shall make the payment deemed reasonable .
Minn. Stat. § 176.83, subd. 5(c) (emphasis added).
Old Republic determined that additional chiropractic treatment was excessive because, according to the standards established by Minn. R. 5521.6200, subp. 3(A), treatment beyond 12 weeks was not indicated. Thus, because there has been no hearing or administrative conference at which the commissioner of labor and industry or a compensation judge determined that chiropractic treatment beyond 12 weeks was not excessive under the rules, section 176.83, subdivision 5(c), provides that Core Health Chiropractic shall not be paid by Old Republic for chiropractic treatment.
But Rodriguez did not seek payment from Old Republic, her employer's workers' compensation insurer; she sought payment from State Farm, her personal automobile insurer. The district court, however, concluded that State Farm is "another insurer," and, therefore, under the plain language of section 176.83, subdivision 5(c), State Farm, like Old Republic, "cannot be required to pay for *874 chiropractic treatment Old Republic determined to be excessive except as provided within the Workers' Compensation Act."
Although we agree that, when considered in isolation, the plain language of section 176.83, subdivision 5(c), provides that Core Health Chiropractic shall not be reimbursed by any insurer, this case involves the interplay between the workers' compensation act and the Minnesota No-Fault Act, and the district court's plain-language construction of section 176.83, subdivision 5(c), conflicts with provisions of the no-fault act. To resolve the parties' dispute, we must address the conflict between the two acts.
Under the no-fault act, "[e]ach plan of reparation security shall provide for payment of economic loss benefits." Minn. Stat. § 65B.49, subd. 2 (2016). Basic economic loss benefits "provide reimbursement for all loss suffered through injury arising out of the maintenance or use of a motor vehicle." Minn. Stat. § 65B.44, subd. 1(a) (2016). A person entitled to basic economic loss benefits is entitled to medical expense benefits, which "shall reimburse all reasonable expenses for necessary ... chiropractic ... services." Minn. Stat. § 65B.44, subd. 2(a)(1) (2016). Thus, under the no-fault act, because, during arbitration, State Farm did not dispute that the chiropractic services that Rodriguez received were reasonable and necessary, Rodriguez is entitled to reimbursement for the expense of the services.
The no-fault act also provides:
Basic economic loss benefits shall be primary with respect to benefits, except for those paid or payable under a workers' compensation law, which any person receives or is entitled to receive from any other source as a result of injury arising out of the maintenance or use of a motor vehicle.
Minn. Stat. § 65B.61, subd. 1 (2016). Under this provision, if Rodriguez is entitled to receive workers' compensation benefits for the chiropractic treatment that she received beyond the 12-week limit, those benefits, rather than her basic economic loss benefits, are the primary source of payment for the treatment. But, at this point, Rodriquez is not entitled to receive additional workers' compensation benefits for chiropractic treatment because there has been no determination by the commissioner of labor and industry or a compensation judge that the treatment she received was not excessive under the workers' compensation rules.
Another provision of the no-fault act specifically addresses this situation. It provides:
A claim for basic economic loss benefits shall be paid without deduction for the benefits which are to be subtracted pursuant to section 65B.61, if these benefits have not been paid to the claimant before the reparation benefits are overdue[2 ] or the claim is paid. The obligor is entitled to reimbursement from the person obligated to make the payments or from the claimant who actually receives the payments.
*875 Minn. Stat. § 65B.54, subd. 3 (2016). Under this provision, even if Rodriguez is entitled to additional workers' compensation benefits for her chiropractic treatment, her claim for basic economic loss benefits must be paid without a deduction for the workers' compensation benefits because those benefits have not been paid and her basic economic loss benefits are overdue. If it is determined that Rodriguez is entitled to workers' compensation benefits, State Farm is entitled to reimbursement from Old Republic or Rodriguez for the amount that should have been subtracted from Rodriguez's basic economic loss benefits pursuant to section 65B.61. Thus, the district court's conclusion that under section 176.83, subdivision 5(c), State Farm cannot be required to pay Core Health Chiropractic for services that Rodriguez received conflicts with the provisions in the no-fault act that require State Farm to pay for the services without a deduction for workers' compensation benefits that would be primary benefits, subject to State Farm's right of reimbursement from Old Republic or Rodriguez.
The legislature has instructed:
When a general provision in a law is in conflict with a special provision in the same or another law, the two shall be construed, if possible, so that effect may be given to both. If the conflict between the two provisions be irreconcilable, the special provision shall prevail and shall be construed as an exception to the general provision, unless the general provision shall be enacted at a later session and it shall be the manifest intention of the legislature that such general provision shall prevail.
Minn. Stat. § 645.26, subd. 1 (2016).
Because neither the commissioner nor a compensation judge has determined whether the treatment that Core Health Chiropractic provided Rodriguez was not excessive, the conflict between the general provision in Minn. Stat. § 176.83, subd. 5(c), that Core Health Chiropractic shall not be reimbursed by an insurer for the treatment it provided is irreconcilable with the special provisions in the no-fault act that require a no-fault insurer to pay basic economic loss benefits when they are due. The general provision states that State Farm shall not reimburse Core Health Chiropractic for the treatment, and the special provisions require State Farm to pay for the treatment, and the provisions cannot be construed to give effect to both. Consequently, under section 645.26, subdivision 1, we must construe the special provisions in the no-fault act as an exception to the general provision in the workers' compensation act, unless the general provision was enacted later than the special provisions and the legislature has manifested its intention that the general provision shall prevail.
The no-fault act was enacted in 1974 and included the provisions that are now codified as Minn. Stat. §§ 65B.44, 65B.49, 65B.54, and 65B.61. 1974 Minn. Laws ch. 408, §§ 4, at 765-67; 9, at 771-74; 14, at 777-78; and 21, at 780-81. Amendments to these statutes after 1974 do not affect our analysis. Minn. Stat. § 176.83 was first enacted in 1983. 1983 Minn. Laws ch. 290, § 165, at 1395-98. Amendments enacted in 1984 and 1992 included the language in section 176.83, subdivision 5(c), that is at issue in this appeal. 1984 Minn. Laws ch. 432, art. 2, § 50, at 127-29; 1992 Minn. Laws ch. 510, art. 4, § 21, at 640-41. Amendments to these statutes after 1992 do not affect our analysis. Thus, the general provision in Minn. Stat. § 176.83, subd. 5(c), was enacted later than the special provisions in the no-fault act.
But we have found no basis to conclude that the legislature intended the general *876 provision in the workers' compensation act to prevail over the special provisions of the no-fault act when an insured driver seeks no-fault benefits. Consequently, we must construe the special provisions of the no-fault act as an exception to section 176.83, subdivision 5(c).
In reaching this conclusion, we note that the special provisions of the no-fault act affect only the time when basic economic loss benefits must be paid; they do not affect the ultimate responsibility for Rodriguez's medical expenses. If State Farm provides economic loss benefits now and it is determined that Rodriguez's chiropractic treatment was not excessive, additional workers' compensation benefits will be payable, and State Farm will be entitled to reimbursement for the benefits it provided that should have been provided by Old Republic. And if it is determined that the treatment was excessive, no benefits will be payable under the workers' compensation law, and State Farm will have paid the basic economic loss benefits that it was obligated to pay when they became due.
In either situation, Rodriguez will have received prompt payment of medical benefits to which she was entitled, which is consistent with the legislature's intended purposes of both the no-fault act and the workers' compensation act. See Minn. Stat. § 65B.42(1) (2016) (stating that one purpose of no-fault act is to provide automobile insurance policies that "will provide prompt payment of specified basic economic loss benefits to victims of automobile accidents without regard to whose fault caused the accident"); Minn. Stat. § 176.001 (2016) (stating that "[i]t is the intent of the legislature that chapter 176 be interpreted so as to assure the quick and efficient delivery of indemnity and medical benefits to injured workers at a reasonable cost to the employers who are subject to the provisions of this chapter").
We also note that the statutory conflict presented in this case arose because neither the commissioner of labor and industry nor a compensation judge has determined whether the chiropractic treatment that Rodriguez received was not excessive under the workers' compensation rules. The record does not demonstrate that this issue has been presented to either the commissioner or a compensation judge, and we do not express any opinion about any insurer's ultimate responsibility to provide medical expense benefits for Rodriguez's chiropractic treatment.
DECISION
Because Rodriguez's basic economic loss benefits are overdue, State Farm must pay the benefits without a deduction for workers' compensation benefits that may become payable, and State Farm is entitled to reimbursement if it is determined that additional workers' compensation benefits are payable.
Reversed .

This court granted Minnesota Association for Justice leave to file an amicus brief.

The no-fault act provides:
Basic economic loss benefits are payable monthly as loss accrues. Loss accrues not when injury occurs, but as ... medical ... expense is incurred. Benefits are overdue if not paid within 30 days after the reparation obligor receives reasonable proof of the fact and amount of loss realized, unless the reparation obligor elects to accumulate claims for periods not exceeding 31 days and pays them within 15 days after the period of accumulation.
Minn. Stat. § 65B.54, subd. 1 (2016). Under this provision, Rodriguez's basic economic loss benefits are overdue.