THISSEN, Justice.
This case requires us to determine whether respondent Jennifer Rodriguez, a bus driver who was injured in a motor vehicle accident while working, may seek reimbursement for chiropractic services related to her injury from appellant State Farm Mutual Automobile Insurance Co. (State Farm), her personal automobile no-fault insurer.
FACTS
Following the accident, Rodriguez sought and received chiropractic care at ChiroFirst and reported the accident to her employer. Her employer's workers' compensation carrier, Old Republic Insurance, agreed to pay workers' compensation benefits. But in accordance with the treatment parameters adopted for purposes of *634 the Workers' Compensation Act, Old Republic refused to pay for more than 12 weeks of chiropractic care. Those parameters state that (subject to certain exceptions) more than 12 weeks of chiropractic care is excessive, unnecessary, or inappropriate. See Minn. R. 5221.6200, subps. 3(C), 9 (2017); Minn. R. 5221.6205, subps. 3(C), 9 (2017); see also Minn. R. 5221.6050, subp. 1 (2017). In accordance with Old Republic's decision, Rodriguez's initial chiropractor, ChiroFirst, stopped treatment after providing 12 weeks of care, so Rodriquez sought and received additional care from a different chiropractor, Core Health Chiropractic (Core Health). It is for that care that Rodriguez sought reimbursement from State Farm. State Farm denied coverage.
State Farm concedes that Rodriguez's injuries, and the chiropractic care she received for those injuries, are covered under its no-fault policy, but argues that Rodriguez is nonetheless barred from no-fault recovery because of Old Republic's determination that more than 12 weeks of care was excessive, unnecessary, or inappropriate. State Farm asserts that, under those circumstances, a provision in the Minnesota Workers' Compensation Act, Minn. Stat. § 176.83, subd. 5(c) (2018), prohibits any further reimbursement to any chiropractor from "any source" including "another insurer."
After State Farm denied coverage, Rodriguez filed a petition for no-fault arbitration, seeking an award of her expenses for chiropractic treatment beyond the 12 weeks already covered by Old Republic. The arbitrator ruled in favor of Rodriguez and awarded her $16,883, which was the full amount that she had sought plus interest and costs. State Farm moved in the district court to vacate the arbitrator's award on the ground that the arbitrator exceeded her authority. The district court granted the motion. The court of appeals reversed the district court and reinstated Rodriguez's award. See Rodriguez v. State Farm Mut. Auto. Ins. Co. , 916 N.W.2d 870, 871 (Minn. App. 2018). We granted State Farm's petition for review.[1]
ANALYSIS
This case presents us with a purely legal issue-determining the meaning of Minn. Stat. § 176.83, subd. 5(c). Our review is de novo. See Gilbertson v. Williams Dingmann, LLC , 894 N.W.2d 148, 151 (Minn. 2017). The statutory interpretation question before us turns on the Legislature's intent when it enacted Minn. Stat. § 176.83, subd. 5(c). The plain language of the statute is our best guide to the Legislature's intent. See State v. Riggs , 865 N.W.2d 679, 682 (Minn. 2015). If the statutory language is clear, the Legislature's intent is clear and we follow it. If the statutory language "is subject to more than one reasonable interpretation," it is ambiguous and we look to other interpretative tools to assist our inquiry into legislative intent. Id. (citing State v. Mauer , 741 N.W.2d 107, 111 (Minn. 2007) ). We construe words and phrases " 'according to rules of grammar and according to their common and approved usage.' " Id. (quoting Minn. Stat. § 645.08(1) (2018) ).
Rodriguez seeks reimbursement from State Farm under the mandatory no-fault provisions of her personal automobile policy. The No-Fault Act provides that "every *635 person suffering loss from injury arising out of maintenance or use of a motor vehicle ... has a right to basic economic loss benefits" if "the accident causing injury occurs in" Minnesota. Minn. Stat. § 65B.46, subd. 1 (2018). Basic economic loss benefits include up to $20,000 in "medical expense loss." Minn. Stat. § 65B.44, subd. 1(a)(1) (2018). "Medical expense benefits shall reimburse all reasonable expenses for [among other things] necessary ... chiropractic ... services ...." Id. , subd. 2(a)(1). State Farm does not contest that, had the accident that caused Rodriguez's back injury been non-work related, State Farm would be liable to pay for Rodriguez's chiropractic treatment subject to the limits of the No-Fault Act and its policy.
But a work-related automobile accident causing an injury complicates matters. In those circumstances, the Workers' Compensation Act and the No-Fault Act both provide benefits for injuries. In this situation, however, the Legislature has made it clear that workers' compensation benefits are primary. The No Fault Act provides:
Basic economic loss benefits shall be primary with respect to benefits, except for those paid or payable under a workers' compensation law , which any person receives or is entitled to receive from any other source as a result of injury arising out of the maintenance or use of a motor vehicle.
Minn. Stat. § 65B.61, subd. 1 (2018) (emphasis added). The "primary" nature of workers' compensation benefits is also reflected in language that precludes a no-fault insurer from coordinating to pay basic economic loss benefits with a workers' compensation insurer. See Minn. Stat. 65B.61, subd. 3 (2018) ("Any legal entity, other than [a no-fault insurer] ... or an insurer or employer obligated to pay benefits under a workers' compensation law , may coordinate any benefits it is obligated to pay ... with basic economic loss benefits." (emphasis added)).
The Legislature's directive that workers' compensation benefits are primary is sufficient to resolve most disputes. If workers' compensation benefits are available, the worker's compensation carrier must provide coverage and pay for medical expenses related to the on-the-job injury. If the worker's compensation benefits do not cover an injury, then the no-fault insurer must pay economic loss benefits subject to the restrictions of the No-Fault Act and the particular policy. See Patrin v. Progressive Rehab Options , 497 N.W.2d 246, 248 (Minn. 1993) (holding that a no-fault insurer must pay benefits when a non-work-related automobile accident is not covered by workers' compensation benefits).[2]
*636 This case falls into an intermediate zone in which workers' compensation benefits cover some-but not all-of the chiropractic expenses reasonably related to Rodriguez's injury. Stated another way, this is a case where benefits available under the Workers' Compensation Act are more limited than benefits available under the No Fault Act.
Rodriguez's injuries are covered by workers' compensation benefits because the accident occurred during the course of Rodriguez's employment. But here, the scope of those benefits is limited by the workers' compensation treatment parameters promulgated by the Commissioner of Labor and Industry at the direction of the Legislature. See Minn. Stat. § 176.83, subd. 5(a) (2018) (providing the Commissioner with the authority to adopt "rules establishing standards and procedures for health care provider treatment"). The treatment parameters are used "to determine whether a provider of health care services and rehabilitation services, including a provider of ... chiropractic ... services, is performing procedures or providing services at a level or with a frequency that is excessive, unnecessary, or inappropriate ...." Id.
The workers' compensation treatment parameters provide, with certain exceptions,[3] that workers' compensation benefits will pay for only 12 weeks of chiropractic treatment. See Minn. R. 5221.6200, subp. 3, 5221.6205, subp. 3. Put another way chiropractic treatment is presumptively not payable under workers' compensation law beyond 12 weeks. Accordingly, under Minn. Stat. § 65B.61, State Farm has primary responsibility to pay for the additional chiropractic expenses reasonably related to Rodriguez's injuries because those medical expenses are not payable under workers' compensation law.
"Not so fast!" says State Farm, pointing to Minn. Stat. § 176.83, subd. 5(c) -the provision of the Workers' Compensation Act at the heart of this dispute. Subdivision 5(c) states:
If it is determined by the [workers' compensation] payer that the level, frequency, or cost of a procedure or service of a provider is excessive, unnecessary, or inappropriate according to the standards established by the rules, the provider shall not be paid for the procedure, service, or cost by an insurer, self-insurer, or group self-insurer, and the provider shall not be reimbursed or attempt to collect reimbursement for the procedure, service, or cost from any other source including the employee, another insurer, the special compensation fund, or any government program unless the commissioner or compensation judge determines at a hearing or administrative conference that the level, frequency, or cost was not excessive under the rules in which case the insurer, self-insurer, or group self-insurer shall make the payment deemed reasonable.
Minn. Stat. § 176.83, subd. 5(c). State Farm argues that because Rodriguez's workers' compensation insurer determined that more than 12 weeks of chiropractic *637 benefits would be excessive, unnecessary, or inappropriate, Core Health (Rodriguez's second chiropractor) is a "provider" that is barred from being "reimbursed or attempt[ing] to collect reimbursement ... from any other source including ... another insurer" like State Farm.
Rodriguez responds that State Farm ignores the statute's plain language and structure. She argues that the only "provider" that Minn. Stat. § 176.83, subd. 5(c), bars from seeking additional reimbursement is the specific provider whose services the workers' compensation payer determined to be excessive. Consequently, because her workers' compensation insurer, Old Republic, never made any determination concerning the services of her second chiropractic provider, Core Health, and because Rodriguez never sought workers' compensation coverage for benefits provided by Core Health, Rodriguez contends that Core Health cannot be "the provider" to which the reimbursement prohibitions of subdivision 5(c) apply.
The statutory interpretation question, then, is this: Does the phrase "the provider" who "shall not be reimbursed" refer only to the specific provider whose services the workers' compensation payer determined to be excessive, unnecessary, or inappropriate, or does the phrase "the provider" refer to any provider who treats an injured worker regardless of whether the worker sought coverage for the treatment from the workers' compensation payer? We conclude that the only reasonable interpretation of Minn. Stat. § 176.83, subd. 5(c), is that the statutory prohibition on reimbursement is limited to the specific provider (here, ChiroFirst) whose services the workers' compensation payer determined to be excessive.
This conclusion is compelled by the language and structure of the statute. Subdivision 5(c) is structured as a conditional statement: If a workers' compensation payer determines that the level, frequency, or cost of a procedure or service of "a provider" is excessive, unnecessary, or inappropriate under the workers' compensation treatment parameters, then "the provider" who was deemed to have provided those services cannot seek reimbursement. See Meyer v. Nwokedi , 777 N.W.2d 218, 225 (Minn. 2010) (construing "if-then" language in a statute as a conditional statement that is triggered only when the conditional aspect of the statement occurs). The "if-then" structure demonstrates that "the provider" is barred from reimbursement only if it is "a provider" who satisfies the condition set forth in the initial clause; namely, "a provider" whose treatment a workers' compensation payer determined to be excessive, unnecessary, or inappropriate. Minn. Stat. § 176.83, subd. 5(c).
This conclusion is buttressed by the use of the definite article "the" in identifying the person or entity subject to the reimbursement prohibition. We have recognized that the definite article "the" is a "word of limitation that indicates a reference to a specific object." Riggs , 865 N.W.2d at 684 (citation omitted) (internal quotation marks omitted); see also State v. Struzyk , 869 N.W.2d 280, 286 (Minn. 2015) ("It is textually significant that the Legislature used 'the,' rather than 'an,' for example."); Clark v. Ritchie , 787 N.W.2d 142, 149 (Minn. 2010) ("Use of the definite article 'the' to modify 'appointment' indicates that the drafters were referring to a specific appointment ...."). Here, the specific object of the prohibition is "the provider" identified in the initial clause of the statute.
Old Republic-the workers' compensation payer in this case-determined only that ChiroFirst's services were excessive. It made no such determination for Core Health. Consequently, Core Health is not *638 "the provider" that is barred by Minn. Stat. § 176.83, subd. 5(c), from being reimbursed because Core Health has never been determined to be providing excessive services.
Our conclusion is further supported by the fact that the word "provider" as used in subdivision 5(c) is shorthand for the phrase "health care provider" used earlier in subdivision 5. Minn. Stat. § 176.83, subd. 5(a) ("[T]he Commissioner shall adopt rules establishing standards and procedures for health care provider treatment." (emphasis added)). A health care provider is defined by the Workers' Compensation Act as, among other medical professions, "a ... chiropractor ... or any other person who furnishes a medical or health service to an employee under this chapter ...." Minn. Stat. § 176.011, subd. 12a (2018) (emphasis added). Accordingly, a "provider" under Minn. Stat. § 176.83, subd. 5(c), means a provider offering services under the workers' compensation regime. See Rabuse v. Rabuse , 304 Minn. 460, 231 N.W.2d 493, 494 (1975) (noting that where a statute read "in a proceeding under this chapter or otherwise," if the "or otherwise" language had not been present, the statute's reach would have been exclusive only to proceedings under the identified chapter). But Rodriguez never sought reimbursement or payment for additional treatment from her second chiropractor, Core Health, under the workers' compensation regime. Consequently, Core Health is not a "provider" to which the reimbursement prohibition of subdivision 5(c) applies.
State Farm counters that the focus of Minn. Stat. § 176.83, subd. 5(c), is on the procedure or service deemed excessive; not on the identification of the provider offering the service. Because Old Republic determined that more than 12 weeks of chiropractic services was excessive, and because Core Health provided Rodriguez chiropractic services in the thirteenth week and beyond, Core Health must be "the provider" who provided excessive services and is barred from further reimbursement.
We disagree. State Farm ignores that the phrase "procedure or service" in the first section of the subdivision is modified by the prepositional phrase "of a provider." Minn. Stat. § 176.83, subd. 5(c) ("If it is determined by a payer that the level, frequency, or cost of a procedure or service of a provider is excessive, unnecessary, or inappropriate ...." (emphasis added)). The preposition "of" connects the "procedure or service" to "a provider," demonstrating that the subdivision's focus is on the provider deemed to be providing excessive services and not on the services themselves. See Webster's Third New International Dictionary 1565 (3d ed. 2002) (defining "of" as, among other things, "a function word to indicate a particular example belonging to the class denoted by the preceding noun"). State Farm asks us to rewrite the provision to say "if it is determined by a payer that the level, frequency, or cost of a procedure or service provided to an injured worker is excessive, unnecessary, or inappropriate ..." Of course, that we cannot do. Laase v. 2007 Chevrolet Tahoe , 776 N.W.2d 431, 438 (Minn. 2009) ("We cannot rewrite a statute under the guise of statutory interpretation.").
Alternatively, State Farm contends that the phrase "the provider" in subdivision 5(c) really means any provider that furnishes a treatment or service deemed excessive, unnecessary, or inappropriate because any other reading would allow an injured worker to side-step the treatment parameters simply by switching chiropractors every 12 weeks. State Farm asserts that this is an "absurd result" and renders subdivision 5(c) superfluous. We find these arguments unconvincing.
*639 First, replacing the limiting definite article "the" with the word "any"-a much broader quantifier that could refer to one or more of something-is impermissible. Such a replacement runs directly counter to our precedent that identifies the word "the" as an important word of limitation, see, e.g. , Struzyk , 869 N.W.2d at 286 ; Riggs , 865 N.W.2d at 684 ; Clark , 787 N.W.2d at 149, and that prevents us from rewriting statutory language, see Laase , 776 N.W.2d at 438.
Moreover, we have been reluctant to displace the plain language of a statute on the grounds of "absurdity." See Schatz v. Interfaith Care Ctr. , 811 N.W.2d 643, 651 (Minn. 2012) (noting that an absurd result can override plain statutory language only in an "exceedingly rare case"); see also State v. Ortega-Rodriguez , 920 N.W.2d 642, 646-47 (Minn. 2018). We have done so only when applying the statute's plain language would "utterly depart from" the statute's purpose. Wegener v. Comm'r of Revenue , 505 N.W.2d 612, 617 (Minn. 1993) (applying the absurdity doctrine where the plain meaning of the statute at issue simultaneously rendered a large part of the statute unconstitutional and inoperative); see also Schatz , 811 N.W.2d at 651 (plain meaning of the statute must "utterly confound[ ]" the clear legislative purpose of the statute). That is not the case here.
Our plain language reading of the statute neither frustrates the purpose of Minn. Stat. § 176.83, subd. 5(c), nor renders it superfluous. The statute does limit the initial workers' compensation provider from seeking compensation for treatment beyond the treatment parameters when the provider's services are deemed excessive, unnecessary, or inappropriate. That the Legislature did not extend the prohibition on seeking compensation as broadly as State Farm would like does not render the Legislature's decision absurd or the limitation it chose superfluous. And nothing about our conclusion prevents a workers' compensation payer from refusing to pay a second chiropractor for the thirteenth week of treatment to an injured worker if the injured worker were to seek reimbursement for such treatment from the workers' compensation provider under the Workers' Compensation Act.[4]
Indeed, if anything, State Farm's interpretation of subdivision 5(c) would lead to *640 some curious results. In particular, if State Farm is correct, Rodriguez could not pay Core Health for chiropractic services out of her own pocket, essentially barring Rodriguez from ever receiving chiropractic treatment. See Minn. Stat. § 176.83, subd. 5(c) ("[T]he provider shall not be reimbursed or attempt to collect reimbursement ... from any other source, including the employee ...." (emphasis added)). We find it hard to believe that the Legislature intended such a result.
In sum, the plain language of Minn. Stat. § 176.83, subd. 5(c), bars reimbursement only for the provider who has been deemed to have provided excessive, unnecessary, or inappropriate services under the Workers' Compensation Act and the workers' compensation treatment parameters. Because Rodriguez seeks reimbursement under the No-Fault Act for services provided by Core Health, and because Core Health has never been deemed by Old Republic to have provided excessive, unnecessary, or inappropriate services, Rodriguez is not barred by the Workers' Compensation Act from seeking reimbursement from State Farm under the No-Fault Act.
CONCLUSION
For the foregoing reasons, we affirm the court of appeals' decision to reinstate Rodriguez's arbitration award.
Affirmed.

Following oral arguments, we ordered supplemental briefing on a narrow question: What does the term "the provider" mean as used in Minn. Stat. § 176.83, subd. 5(c) ? We specifically requested that the parties address whether the term means "only the provider whose procedure or service was determined to be excessive, unnecessary, or inappropriate by the payer." Each party filed a supplemental brief responding to our order.

Despite the primary nature of workers' compensation benefits, the Workers' Compensation Act and the No-Fault Act work together. Record v. Metro. Transit Comm'n , 284 N.W.2d 542, 546 (Minn. 1979) ("To the extent that both the no-fault and workers' compensation acts provide for compensation for personal injuries arising from motor vehicle accidents, the statutes ... constitute a harmonious and uniform system of law."), superseded by statute as recognized by Hoben v. City of Minneapolis , 324 N.W.2d 161 (Minn. 1982). Under Minn. Stat. § 65B.54, subd. 3, a no-fault insurer must pay for a claimant's reasonable medical expenses-even if they could be paid for by workers' compensation benefits. See Record , 284 N.W.2d at 545. In Record , we noted that "the clear purpose of [Minn. Stat. § 65B.54, subd. 3 ] is to provide prompt payment of economic benefits to an insured." Id. Indeed, we noted that because the No-Fault Act and the Workers' Compensation Act provide many of the same benefits, but the workers' compensation benefits are often contested, "[t]he clear purpose of § 65B.54, subd. 3, is to require a no-fault reparation obligor to pay benefits such as medical expense and income loss before they become overdue, regardless of what might be the ultimate outcome of the workers' compensation claim. Id. (emphasis added). The no-fault insurer is entitled to "reimbursement from the person obligated to make the payments or from the claimant who actually receives the payments" when it is determined that other benefits (like workers' compensation) should actually have paid for the expense. Id.

An insurer may , under certain circumstances, pay for coverage beyond that 12-week limit. See Minn. R. 5221.6200, subp. 3(B), 5221.6205, subp. 3(B). There is nothing in the record to suggest (or deny) that any exception to the 12-week limitation applies in this case.

State Farm is also incorrect when it claims that the workers' compensation treatment parameters serve the incredibly ambitious role of holding down costs across the entire health care industry. In the years leading up to 1983, the Legislature recognized growing concern over increasing workers' compensation premiums. The purpose of establishing the workers' compensation treatment parameters in general was much more targeted: To control or reduce workers' compensation insurance premiums by controlling the growth of health care costs within the workers' compensation system. See Leslie Altman et al., Minnesota's Workers' Compensation Scheme: The Effects and Effectiveness of the 1983 Amendments , 13 Wm. Mitchell L. Rev. 843, 846-47 (1987) (discussing various studies); see also C. Arthur Williams Jr. et al., Univ. of Minn. Indus. Relations Ctr., Minnesota Workers' Compensation Benefits and Costs: An Objective Analysis (1983); Minn. Dep't of Commerce Ins. Div., Workers' Compensation In Minnesota: An Analysis with Recommendations (1982); Citizens League Workers' Comp. Comm., Workers' Compensation Reform: Get The Employees Back on the Job (1982); Minn. Workers' Comp. Study Comm'n, Report of the Workers' Compensation Study Commission (1979). Accordingly, in 1983, the Legislature enacted several policy proposals aimed at reducing premiums. See Act of June 7, 1983, ch. 290, § 84, 1983 Minn. Laws 1310, 1356. The Legislature created a medical monitoring system under the authority of the Commissioner of the Department of Labor and Industry. See Minn. Stat. § 176.103, subds. 1-3 (1984). The Legislature also established the Medical Services Review Board to review the Commissioner's decisions regarding the consequences of services provided to injured employees. Id. , subd. 3. The Legislature authorized the Commissioner to work with the Medical Services Review Board to adopt rules setting standards and procedures for determining whether a provider of health care services performed procedures or providing services at an excessive level or frequency based on accepted medical standards. See Minn. Stat. § 176.83, subd. 4 (1984). And finally, the Legislature enacted the first version of Minn. Stat. § 176.83, the statute at issue here. Our interpretation of the statute does not undermine the goal of holding down workers' compensation premiums by limiting the level, frequency, or cost of services and procedures that workers' compensation insurers are required to pay.