STATE OF MINNESOTA

IN SUPREME COURT

A23-0590

Court of Appeals

McKeig, J.
Took no part, Hennesy, J.

State of Minnesota,

Respondent,

vs.

Filed: January 8, 2025
Office of Appellate Courts

Edgard Francisco Talave Latino,

Appellant.

_____

Keith Ellison, Attorney General, Peter Magnuson, Assistant Attorney General, Saint Paul, Minnesota; and

Brandi Schiefelbein, Meeker County Attorney, Litchfield, Minnesota, for respondent.

Cathryn Middlebrook, Chief Appellate Public Defender, Sharon E. Jacks, Assistant Public Defender, Saint Paul, Minnesota, for appellant.

_____

S Y L L A B U S

1.      For purposes of the domestic-assault statute, a "family or household member" may include persons involved in not only a current, but also a former significant romantic or sexual relationship.

1

2.     The evidence presented at trial was sufficient to support the district court's finding that the appellant had been involved in a significant romantic or sexual relationship with the victim as required by the statute.

Affirmed.

O P I N I O N

McKEIG, Justice.

To commit misdemeanor domestic assault, a person must assault "a family or household member." Minn. Stat. § 609.2242, subd. 1 (2024). The Legislature incorporated the definition of "family or household member" from the civil Domestic Abuse Act into the domestic-assault statute. *See id.* (stating that a "family or household member" is the same "as defined in section 518B.01, subdivision 2" of the Domestic Abuse Act). Under this statutory definition, a person is a family or household member if they are "involved in a significant romantic or sexual relationship" with the defendant. Minn. Stat. § 518B.01, subd. 2(b)(7) (2024). This case asks whether persons involved in a *former* significant romantic or sexual relationship can be family or household members for the purpose of the domestic-assault statute.

Following a court trial, the district court found appellant Edgard Talave Latino guilty of misdemeanor domestic assault, finding that he and M.T.L. had been involved in a former significant romantic and sexual relationship. The court of appeals affirmed Latino's domestic-assault conviction. We agree, concluding that "family or household members" may include persons involved in a former significant romantic or sexual relationship. We further conclude that the evidence presented at trial was sufficient to

prove that Latino and M.T.L. were in such a relationship as required by the statute. Therefore, we affirm the decision of the court of appeals.

## FACTS

Latino and M.T.L. were in a relationship that ended by the time of the assault. The two met sometime in 2020 when Latino moved into a different unit in the same apartment complex where M.T.L. resided. Their relationship evolved from one of friendship to romance around the spring of 2020. During their relationship, each person pursued other relationships. The district court described Latino and M.T.L.'s relationship as "on again and off again." By November 2021, the relationship had ended.

Days after their relationship had ended—shortly before noon on Friday, November 12, 2021—Latino drove to M.T.L.'s apartment. Upon his arrival, Latino contacted M.T.L. through a videocall. She could see on the videocall that Latino was in her parking lot. M.T.L. told Latino to leave and started getting ready to leave herself. When she came out of the bathroom, Latino was already inside her apartment.

M.T.L. and Latino argued in her kitchen. Latino asked M.T.L. to give him "another chance." When M.T.L. told Latino "there were no more chances," Latino got upset, started yelling, and grabbed M.T.L. by the shoulders. Latino pushed M.T.L. down a hallway toward her bedroom, hurting her shoulder and head. Inside the bedroom, Latino assaulted M.T.L.

On November 15, 2021, the State charged Latino with three offenses, including misdemeanor domestic assault, Minn. Stat. § 609.2242, subd. 1(2). Latino waived his right

3

to a jury trial.  After a court trial, the district court found Latino guilty of domestic assault.[1] The district court recognized that the domestic-assault statute required the State to prove that M.T.L. "was a member of [Latino's] family or household."  The district court stated that "former spouses or romantic partners" fall within the definition of "family or household members."  It found the State had met its burden by proving Latino and M.T.L. were in a former significant romantic and sexual relationship.

On appeal, Latino argued, among other issues, that there was insufficient evidence to sustain his conviction for domestic assault.  Latino sought reversal of his conviction on the grounds that the district court misapplied the law.  He argued that the statutory definition of "family or household members" as including "persons involved in a significant romantic or sexual relationship" only applies to people currently in a relationship at the time of the assault.  Although Latino conceded that the State presented evidence that he and M.T.L. had a *former* romantic or sexual relationship, he argued the State did not prove a *current* relationship at the time of the assault.  Thus, Latino argued that the State did not meet its burden under the statute.

The court of appeals disagreed with Latino's argument, affirming his conviction. *State v. Latino*, No. A23-0590, 2024 WL 1154415, at *4 (Minn. App. Mar. 18, 2024). Relying on its decision in *Sperle v. Orth*, 763 N.W.2d 670 (Minn. App. 2009), the court of appeals rejected the argument that persons "were not family or household members . . . [if]

---

[1]    The district court also found Latino guilty of first-degree burglary and third-degree criminal sexual conduct.  Latino's convictions for these offenses are not before us in this appeal.

4

they were not currently involved in a significant romantic or sexual relationship." *Latino*, 2024 WL 1154415, at \*4 (alteration and omission in original) (internal quotation marks omitted) (citation omitted). The court of appeals noted that the *Sperle* court had held that "a former relationship may qualify as a significant romantic or sexual relationship" under the statute. *Id.* Because Latino did not dispute that he and M.T.L. were in a past significant romantic or sexual relationship, the court of appeals reasoned that M.T.L. was a family or household member. *Id.* As a result, the court of appeals held there was sufficient evidence to sustain Latino's conviction for misdemeanor domestic assault. *Id.*

Latino petitioned this court for review of his case. We granted review on the following issue: whether, for the purposes of the domestic-assault statute, "persons involved in a significant romantic or sexual relationship" includes persons who are no longer in such a relationship when an assault occurs.

## ANALYSIS

This case requires us to determine whether the inclusion of "persons involved in a significant romantic or sexual relationship" within the statutory definition of "family or household members" as used in the domestic-assault statute, extends to *former* significant romantic or sexual relationships. When the meaning of a statute is at issue in a sufficiency-of-the-evidence challenge, we must first interpret the statute. *State v. Robinson*, 921 N.W.2d 755, 758 (Minn. 2019). Statutory interpretation is a question of law, subject to de novo review. *State v. Culver*, 941 N.W.2d 134, 139 (Minn. 2020). "On questions of statutory interpretation, our objective is to effectuate the Legislature's intent." *Hibbing Taconite Co. v. Comm'r of Revenue*, 958 N.W.2d 325, 329 (Minn. 2021). Once we define

5

the elements of the offense, we then assess whether the evidence was sufficient. *Robinson*, 921 N.W.2d at 758.

Latino argues that the plain language of the statute is unambiguous. He contends that the statutory phrase "involved in a significant romantic or sexual relationship" includes only present, ongoing relationships. Latino further asserts that, based on this interpretation, the evidence presented at trial was insufficient to prove that he was involved in a significant relationship with M.T.L. as required by the statute.

I.

We turn first to the parties' differing interpretation of the statutory language. "The preliminary step in statutory interpretation is to determine whether the language, on its face, is ambiguous." *Id.* "Statutory language is ambiguous only if, as applied to the facts of the particular case, it is susceptible to more than one reasonable interpretation." *Dupey v. State*, 868 N.W.2d 36, 39 (Minn. 2015) (citing *Staab v. Diocese of St. Cloud*, 813 N.W.2d 68, 72 (Minn. 2012)). If the statutory language only has one reasonable interpretation, it is unambiguous, and we must enforce the plain meaning. *Id.* But if a statute is ambiguous, then we may apply canons of construction to resolve the statute's ambiguity. *State v. Thonesavanh*, 904 N.W.2d 432, 435 (Minn. 2017).

A.

Our first step is to consider whether the statutory language is ambiguous. We begin our analysis with the relevant statutory text because "[t]he plain language of the statute is our best guide to the Legislature's intent." *Rodriguez v. State Farm Mut. Auto. Ins. Co.*, 931 N.W.2d 632, 634 (Minn. 2019). Under Minnesota law, whoever assaults a "family or

6

household member" is guilty of misdemeanor domestic assault. Minn. Stat. § 609.2242, subd. 1. The domestic-assault statute incorporates the definition of "family or household members" from the civil Domestic Abuse Act. *See id.* ("Whoever does any of the following against a family or household member as defined in section 518B.01, subdivision 2 . . . ."). That act defines "family or household members" using seven enumerated clauses, each of which specifies a category of persons included within the definition:

> (1) spouses and former spouses;
> (2) parents and children;
> (3) persons related by blood;
> (4) persons who are presently residing together or who have resided together in the past;
> (5) persons who have a child in common regardless of whether they have been married or have lived together at any time;
> (6) a man and woman if the woman is pregnant and the man is alleged to be the father, regardless of whether they have been married or have lived together at any time; and
> (7) *persons involved in a significant romantic or sexual relationship.*

Minn. Stat. § 518B.01, subd. 2(b) (emphasis added). Notably, some categories within this subdivision include modifying language expressly referencing the past, but clause (7) does not. For example, the definition includes "spouses and *former* spouses" and "persons who are presently residing together or who have resided together *in the past*." *Id.*, subd. 2(b)(1), (4) (emphases added). "[D]istinctions in [statutory] language in the same context are presumed to be intentional, and we apply the language consistent with that intent." *In re Stadsvold*, 754 N.W.2d 323, 328–29 (Minn. 2008). Applying this principle, one reasonable interpretation of clause (7)'s lack of modifying language expressly referencing the past would be that the Legislature intended to differentiate dating partners from cohabitants and

married couples. This reasoning supports Latino's proposed interpretation of "family or household members."

That is not the only reasonable interpretation, however. An additional sentence after the seven enumerated clauses states that "[i]n determining whether persons *are or have been involved in* a significant romantic or sexual relationship under clause (7), the court shall consider the length of time of the relationship; type of relationship; frequency of interaction between the parties; and, *if the relationship has terminated, length of time since the termination*." Minn. Stat. § 518B.01, subd. 2(b) (emphasis added).[2] This sentence uses the past tense—"have been involved in"—in reference to the phrase "involved in" in subdivision 2(b)(7) and lists statutory factors to be considered in making this determination, including in circumstances where "the relationship has terminated." The Legislature's use of past tense and its reference to terminated relationships in this sentence acts similar to the modifying language the Legislature included in subdivisions 2(b)(1) and (4). *See* Minn. Stat. § 518B.01, subd. 2(b)(1), (4) (including "*former* spouses" and "persons . . . who have resided together *in the past*" into the definition of "family or

_____

[2] We decided a similar though distinct issue in *State v. Robinson*, 921 N.W.2d 755 (Minn. 2019). There, we were asked to determine whether a short-term, uncommitted relationship is a "significant romantic or sexual relationship" for purposes of Minn. Stat. § 518B.01, subd. 2(b)(7). *Robinson*, 921 N.W.2d at 760. In examining the relationship in *Robinson*, we concluded that the phrase "significant romantic or sexual relationship" is unambiguous. *Id.* The plain meaning of the phrase is understood by reference to the statutory factors set forth in the subdivision 2(b) of that statute: "length of time of the relationship; type of relationship; frequency of interaction between the parties; and, if the relationship has terminated, length of time since the termination." *Id.* (quoting Minn. Stat. § 518B.01, subd. 2(b)). For the reasons we articulate in this opinion, the same conclusion cannot be drawn about the meaning of "involved in" as used in the statute.

household members" (emphases added)).  Under this interpretation, which is also reasonable and supports the State's position, the Legislature, through the text, acknowledged that clause (7) may encompass *former* significant romantic relationships subject to application of the statutory factors.[3]

Accordingly, because "involved in a significant romantic or sexual relationship," under Minnesota Statutes section 518B.01, subdivision 2(b)(7), has more than one reasonable interpretation, it is ambiguous.

B.

Having determined that the statute is ambiguous, we now turn to canons of construction to discern its meaning.  *Thonesavanh*, 904 N.W.2d at 436.  When confronted with an ambiguous statute, we may ascertain the intention of the Legislature by considering contemporaneous legislative history, the mischief to be remedied, and the consequences of a particular interpretation.  Minn. Stat.§ 645.16; *see Stabs v. City of Tower*, 40 N.W.2d 362, 366 (Minn. 1949); *State v. Moore*, 10 N.W.3d 676 (Minn. 2024).  These canons of

---

[3]    This sentence's reference to persons who "have been involved in a significant romantic or sexual relationship under clause (7)" can also be reasonably interpreted as intended to capture people in a significant romantic or sexual relationship at the time of the assault, but no longer in such a relationship at the time of judicial proceedings.  This interpretation is supported by the fact that the focus of the sentence is identifying what a factfinder in a court proceeding may consider when determining whether a significant relationship occurred.  *See* Minn. Stat. § 518B.01, subd. 2(b) (listing the four factors).  That subdivision 2(b)(7) falls within the Domestic Abuse Act, and the definition originally relates to the issuance of an order for protection—a determination made by the court rather than a jury—also supports this interpretation.  Under this reading, the Legislature intended to be clear that persons who committed domestic assault during an ongoing relationship may still be subject to the issuance of a protective order if the relationship has ended by the time the court proceeding occurs.

9

construction demonstrate that the Legislature intended to include both present and certain former significant romantic and sexual relationships in the meaning of "family or household members."

We first consider the contemporaneous legislative history because we find it particularly persuasive here. In doing so, we may consider the events leading up to and history of a bill's passage, and any modification made during its course. *Handle With Care, Inc. v. Dept. of Human Services*, 406 N.W.2d 518, 522 (Minn. 1987). When considering contemporary legislative history, we have used recordings of committee hearings. *E.g.*, *First Nat'l Bank of Deerwood v. Gregg,* 556 N.W.2d 214, 217 (Minn. 1996). Of specific importance here is a recording from the Senate Judiciary Committee. *See* Hearing on S.F. No. 1052, S. Judiciary Comm., 79th Minn. Leg., Mar. 28, 1995 (audio file 2). When amending the Domestic Abuse Act to include clause (7) and the statutory factors that follow it, the committee members spent several minutes discussing the question key to the current dispute: should "involved in a significant romantic or sexual relationship" include former relationships. *Id.* at 00:19:20–25:07.[4]

Their answer to this question was yes. The committee made several grammatical changes to the statute during this hearing that suggest "persons involved in a significant romantic or sexual relationship" is meant to incorporate both ongoing and certain former

---

[4] Although the House Judiciary Committee held a hearing to discuss the amendment, it passed the motion without substantive discussion about whether the statutory language was intended to include former relationships. Hearing on H.F. No. 1438, H. Judiciary Comm., 79th Minn. Leg., Apr. 5, 1995 (audio audio file 1) at 00:9:10–15:30.

relationships. Initially, clause (7) read "persons who have had a significant relationship," but the legislators were concerned that this language only accounted for previous relationships. Hearing on S.F. No. 1052, S. Judiciary Comm., 79th Minn. Leg., Mar. 28, 1995 (audio file 2) at 00:19:20–25:07. After considering several other options,[5] the legislators decided to use "involved in" because "normally the present tense includes any other tense." *Id.* at 00:21:30. One senator mentioned that a person would read clause (7)'s language, "look down at the actual factors, [and see that courts] are supposed to consider . . . if the relationship has terminated, length of time since the termination. So, I think that would be clear." *Id.* at 00:21:30–57. The legislators also changed the language in the sentence subsequent to clause (7) from "are involved in" to "are or have been involved in" because the former "doesn't allow for were involved in." *Id.* at 00:23:28–24:15. These statements show the legislators' intent to craft language that encompasses certain former relationships in addition to current relationships. Contemporaneous legislative history therefore supports the interpretation that the phrase "family or household members" is meant to include both present and former significant romantic or sexual relationships.

---

[5]     Throughout the conversation, the legislators considered the following options: "persons who have had a significant romantic or sexual relationship," "persons who have or have had a significant romantic or sexual relationship," "persons who currently have or had in the past a significant romantic or sexual relationship," "persons who were involved in the past," and "persons involved in a significant romantic or sexual relationship." Hearing on S.F. No. 1052, S. Judiciary Comm., 79th Minn. Leg., Mar. 28, 1995 (audio file 2) at 00:18:50–21:38.

11

This interpretation is also supported by the mischief to be remedied. "The judicial function of interpretation should be to so construe the act as to suppress the mischief and advance the remedy according to the true intent of the legislature as near as that can be determined." *Phelps v. Benson*, 90 N.W.2d 533, 536 (Minn. 1958) (footnote omitted). During the Senate Judiciary Committee hearing, the legislators made clear their intent to protect dating partners from domestic violence. Hearing on S.F. No. 1052, S. Judiciary Comm., 79th Minn. Leg., Mar. 28, 1995 (audio file 2) at 00:18:10–19:10 (noting that twelve states "already include dating partners in their domestic abuse acts"). The purpose behind the amendment was to extend the same rights to dating partners as the Legislature had given to persons living together in the same household and married couples. *See, e.g.*, *id.* at 00:28:50–29:15. Although these statements and testimonies were made in the context of extending orders for protection to dating partners, they show that the mischief to be remedied by the Legislature was to extend protections afforded to cohabitants and married couples under the Domestic Abuse Act to certain dating partners. Because Minn. Stat. § 518B.01, subds. 2(b)(1) and (4) protect former spouses and persons who have resided together in the past, it follows that the Legislature intended for subdivision 2(b)(7) to include former significant relationships. Thus, this canon of construction also supports the interpretation that "persons involved in a significant romantic or sexual relationship" includes both present and former relationships.

Finally, we consider the consequences of a particular interpretation. Latino's interpretation—that the statute only includes present, ongoing significant relationships—would allow an individual to terminate a significant relationship and then immediately

12

assault their former partner while evading punishment for domestic assault. Latino's interpretation would also mean that a former spouse that commits an assault against a partner with whom they had been married for one year could be charged with domestic assault under Minn. Stat. § 609.2242, while a dating partner that commits an assault against a partner with whom they had a relationship for ten years could only be charged with standard assault. *See* Minn. Stat. § 609.221–24 (2024). The consequences of Latino's interpretation suggest that it does not align with the Legislature's intent to provide protection from domestic abuse to dating partners. Thus, this canon of construction also counsels against adopting Latino's proposed interpretation.

Accordingly, we conclude that these three canons favor a construction of the phrase "involved in a significant romantic or sexual relationship" that includes former relationships. This construction adheres to the Legislature's intent by affording the same protections to dating partners as the Legislature vested in cohabitants and married couples. We therefore conclude that "persons involved in a significant romantic or sexual relationship" includes both present, ongoing relationships and former relationships.

However, the conclusion that "persons involved in a significant romantic or sexual relationship" includes past relationships does not mean that a mere assertion that persons were once involved in such a relationship satisfies the statutory requirement. Some former significant romantic or sexual relationships will not fall within the statute. When conducting a trial, the factfinder must consider the four statutory factors contained in Minn. Stat. § 518B.01, subd. 2(b) to determine whether the relationship falls within the scope of clause (7): the length of time of the relationship; type of relationship; frequency of

13

interaction between the parties; and, if the relationship has terminated, length of time since the termination. These factors provide "context, clarity, and guidance" to the district court. *Robinson*, 921 N.W.2d at 759 n. 1. We encourage district courts conducting court trials to make findings regarding the statutory factors in their additional findings of essential facts pursuant to Minn. R. Crim P. 26.01, subd. 2(b)–(c). Doing so aligns with the Legislature's intent.

\*       \*       \*

For the reasons stated, we hold that for purposes of the domestic-assault statute, "family or household members" may include persons involved in a former significant romantic or sexual relationship, subject to application of the four statutory factors listed in Minn. Stat. § 518B.01, subd. 2(b).

## II.

We next turn to whether the evidence presented was sufficient for the factfinder to find that Latino and M.T.L. were "involved in a significant romantic or sexual relationship" as required by the statute. When reviewing the sufficiency of the evidence, we carefully analyze the record to determine whether the evidence, when viewed in the light most favorable to the conviction, was sufficient to permit the factfinder to reach its verdict. *Robinson*, 921 N.W.2d at 761; *see also State v. Dorn,* 887 N.W.2d 826, 830 (Minn. 2016) (concluding this standard applies to both court and jury trials). We assume that the factfinder believed the State's witnesses and disbelieved contrary evidence. *State v. Brocks*, 587 N.W.2d 37, 42 (Minn. 1998). We defer to the district court when it acts as the factfinder in a court trial, because it is generally in the best position to weigh the credibility

of the evidence and thus determine which witnesses to believe and how much weight to give their testimony. *State v. Dickerson,* 481 N.W.2d 840, 843 (Minn. 1992), *aff'd sub nom. Minnesota v. Dickerson*, 508 U.S. 366 (1993). Here, the district court found M.T.L.'s testimony more credible than Latino's testimony. We therefore assume that the district court believed her testimony and disbelieved any contrary evidence. We will not disturb a guilty verdict if the factfinder, acting with due regard for the presumption of innocence and the requirement of proof beyond a reasonable doubt, could have reasonably concluded that the State proved the defendant's guilt. *Bernhardt v. State*, 684 N.W.2d 465, 476–77 (Minn. 2004).

We analyze the evidence using the statutory factors to determine whether Latino and M.T.L. were "persons involved in a significant romantic or sexual relationship": the length of the relationship; the type of relationship; the frequency of interactions between Latino and M.T.L.; and because the relationship had terminated, the length of time since the termination. *See* Minn. Stat. § 518B.01, subd. 2(b).

The evidence presented at trial was sufficient for the district court to find that Latino and M.T.L. were involved in a significant romantic or sexual relationship as required by the statute. First, we look to the length of time of the relationship. The parties met when Latino moved into M.T.L.'s apartment building in 2020. Their relationship started shortly thereafter, around June or July 2020. Their relationship terminated sometime in November 2021. Therefore, their relationship lasted approximately 18 months. Second, we consider the type of relationship. Plainly, Latino and M.T.L. had a significant romantic and sexual, non-exclusive, relationship. Their lives were entwined for a period of time. M.T.L.

15

communicated with Latino's mother and friends in Venezuela, and Latino spent time with M.T.L.'s three young children. Third, we consider the frequency of interaction between the parties. Latino and M.T.L. frequently interacted with one another through both in-person interactions and digital communications. Latino would visit M.T.L.'s apartment several evenings throughout the week. Finally, because the relationship had terminated, we consider the length of time since the termination. M.T.L. and Latino terminated their relationship in the first weeks of November 2021. Only days had passed between the termination of their relationship and the assault. Given the length of the relationship, the fact that it was a significant romantic and sexual one, the parties' frequent communications with one another, and the relationship's recent termination when the assault occurred, we conclude that the State presented sufficient evidence to support the district court's finding that Latino and M.T.L. were involved in a significant romantic or sexual relationship as required by the statute.

## CONCLUSION

For the foregoing reasons, we affirm the decision of the court of appeals.

Affirmed.


HENNESY, J., took no part in the consideration or decision of this case.