STATE OF MINNESOTA

IN SUPREME COURT

A23-0222

Tax Court

Moore, III, J.
Dissenting, Anderson, J., Hudson, C.J.
Took no part, Procaccini, J.

Cities Management, Inc.,

Relator,

vs.

Filed: November 22, 2023
Office of Appellate Courts

Commissioner of Revenue,

Respondent.

_____

Masha M. Yevzelman, Jennifer R. Pusch, Fredrikson & Byron, P.A., Minneapolis, Minnesota, for relator.

Keith Ellison, Attorney General, Jennifer A. Kitchak, Assistant Attorney General, Saint Paul, Minnesota, for respondent.

Benjamin A. Wagner, Kathleen E. Pfutzenreuter, Wagner Tax Law, Minneapolis, Minnesota, for amici curiae Minnesota Society of Certified Public Accountants and Minnesota Chamber of Commerce.

_____

1

SYLLABUS

Under Minn. Stat. § 290.17 (2014), income of a trade or business that does not constitute "nonbusiness income" is business income subject to apportionment by the State of Minnesota.

Affirmed.

OPINION

MOORE, III, Justice.

This case concerns the authority of the Commissioner of Revenue to apportion the income of a nonresident under Minn. Stat. § 290.17 (2014).[1]  Relator Cities Management, Inc. (CMI) is an S corporation that did business in Minnesota and Wisconsin and was owned in part by a nonresident.  Following the sale of the corporation to another business in 2015, CMI and its nonresident partial owner filed Minnesota tax returns, characterizing the gain on the sale of goodwill as income that was not subject to apportionment by the State of Minnesota under section 290.17.  Respondent Commissioner of Revenue disagreed and assessed tax on an apportioned share of CMI's income from the sale.  The Minnesota Tax Court affirmed the Commissioner's assessment.  Because we conclude that the income from the sale of the corporation is apportionable business income, we affirm.

---

[1]    Because the tax returns at issue were filed in 2015, we note that the 2014 version of Minn. Stat. § 290.17 applies to this dispute.

2

## FACTS

The facts here are undisputed. CMI is a Minnesota S corporation[2] that manages community associations in Minnesota and Wisconsin. Until 2015, CMI was owned in part by a nonresident named Kim Carlson. That year, Carlson and her co-owner sold their stock ownership interests in CMI to an unrelated third party. The purchaser requested that the two owners agree to make an election under I.R.C. § 388(h)(10) as part of the sale. Under this election, the sale of CMI stock would be treated as a sale of CMI's underlying assets for federal income tax purposes and the purchaser would obtain a stepped-up basis in CMI's assets. *See* 33 Am. Jur. 2d *Federal Taxation* ¶ 5100 (2006). Before agreeing to the buyer's terms, Carlson consulted a public accounting firm for advice regarding the Minnesota state tax impact of making a federal section 338(h)(10) election as part of the CMI sale.[3]

The Minnesota state tax treatment of this type of income is governed by Minn. Stat. § 290.17, which sets forth allocation rules for the income of nonresidents, including

---

[2] Minnesota Statutes § 290.9725 (2022) defines an "S corporation" as "any corporation having a valid election in effect for the taxable year under section 1362 of the Internal Revenue Code." Under this elective tax status, the profits and losses of an S corporation must "pass through directly to its shareholders on a pro rata basis" and are "reported on the shareholders' individual tax returns." *Billion v. Comm'r of Revenue*, 827 N.W.2d 773, 775 n.1 (Minn. 2013) (citation omitted) (internal quotation marks omitted).

[3] It is noteworthy that Minnesota's statutes and rules do not explicitly reference the tax consequences of a section 338(h)(10) election. "Although states almost always honor the Section 338(h)(10) election, few have statutes or regulations specifically addressing the effect of a Section 338(h)(10) election, and the state tax consequences of such an election have spawned considerable controversy." Jerome R. Hellerstein et al., *State Taxation* ¶ 7.14 (3d ed. 2017) (footnotes omitted).

nonresident shareholders of S corporations.[4] These allocation rules specify whether certain types of income are *assigned* to a particular state for taxation by that state or whether the income must be *apportioned* between Minnesota and other states. If income is apportioned between Minnesota and another state, an apportionment formula is applied to the income to determine the amount of income subject to taxation by Minnesota. *See* Minn. Stat. § 290.191 (2022).

In advising Carlson and CMI about the tax impact of the proposed terms of the sale, the public accounting firm relied on the tax court's interpretation of section 290.17 in *Nadler v. Commissioner of Revenue*, No. 7736 R, 2006 WL 1084260 (Minn. T.C. Apr. 21, 2006). In *Nadler*, the tax court determined that income generated by the sale of goodwill constituted "nonbusiness income" that was subject to allocation under subdivision 2(c) of section 290.17. *Nadler*, 2006 WL 1084260, at *7–8. *Nadler* was not appealed to our court following the tax court's decision. Based on *Nadler*, the public accounting firm advised Carlson and CMI that gain on the portion of sale proceeds considered CMI's goodwill would be taxed under Minn. Stat. § 290.17, subd. 2(c). This provision directs that gain on the sale of goodwill "that is connected with a business operating all or partially in

---

[4]    Minnesota Statutes § 290.17 contains six subdivisions: subdivision 1 dictates the scope of the state's allocation rules; subdivision 2 provides rules for  assigning "income not derived from conduct of a trade or business"; subdivision 3 provides the rules of apportioning "trade or business income"; subdivision 4 codifies the constitutional "unitary business principle"; subdivision 5 provides a special rule for "income from the operation of an athletic team"; and subdivision 6 defines "nonbusiness income." Minn. Stat. § 290.17.

Minnesota is allocated to this state to the extent that the income from the business in the year preceding the year of sale was assignable to Minnesota under subdivision 3."[5] *Id.*

Carlson and her co-owner agreed to make a federal section 338(h)(10) election as part of the sale, and CMI was purchased in September 2015 for $8,763,041. In preparing CMI's 2015 Minnesota tax return, CMI's accountants again followed and relied on *Nadler*, characterizing the gain on the sale of CMI's goodwill as income "not derived from the conduct of a trade or business," Minn. Stat. § 290.17, subd. 2, and assigned the income from the sale of CMI's goodwill to Minnesota in accordance with subdivision 2(c).[6]

Unbeknownst to Carlson, CMI, or their accountants, the Department of Revenue had internally taken the position that it "d[id] not acquiesce" to the tax court's decision in *Nadler*. Minn. Dep't of Revenue, Technical Advice Memorandum (May 4, 2007). As early as 2007, the Department was circulating non-public *internal* technical advice memoranda and other documents in which it informed auditors that the Department would not follow the tax court's reasoning in *Nadler*. The Commissioner did not make the Department's disagreement with the tax court's decision public until July 2017, when Revenue Notice 17-02 was issued. This notice "advise[d] non-resident individuals that the

---

[5]    The 2014 version of Minn. Stat. § 290.17 that applies to this dispute referenced the income from the business in the year proceeding the sale as being "assignable." In 2017, the Minnesota Legislature amended section 290.17 to use the term "allocable." Act of May 30, 2017, ch. 1, art. 13, § 11, subd. 2(c), 2017 Minn. Laws 1st Spec. Sess. 182, 189-90.

[6]    For simplicity, we refer to the gain from the sale of CMI's goodwill as "CMI's income," although a proportionate share of the income ultimately passed through to Carlson, a nonresident shareholder of the S corporation, under Minn. Stat. § 290.9725.

department does not administer the income allocation provisions in [section 290.17] using the Minnesota Tax Court's reasoning in *Nadler v. Commissioner*, No. 7736 R, 2006 WL 1084260 (Minn. Tax Ct.)." Minn. Dep't of Revenue Notice No. 17-02 (July 3, 2017).

In September 2018, following an audit of CMI's income tax return, the Commissioner determined that CMI had applied the incorrect allocation rule in section 290.17 to income from the sale. Under the Commissioner's view of the statute, that income was business income subject to apportionment and thus should not have been assigned under subdivision 2(c). Based on the audit, the Commissioner assessed CMI $433,017 in nonresident withholding tax, plus interest, and a penalty of $86,603 for substantial understatement of tax payable.

In summary, CMI and the Commissioner reached different tax assessments because of a dispute about whether the gain from the sale of CMI's goodwill was nonbusiness income. If the sale income was nonbusiness income, a specific allocation formula for that portion of CMI's yearly income would apply under subdivision 2(c) of section 290.17. All other income from CMI's business would then be apportioned under subdivision 3 of section 290.17 using a different apportionment formula. If the sale income was business income, however, the sale income *plus all other business income* would be apportioned under subdivision 3. CMI allocated the sale income under subdivision 2(c) and apportioned the remainder of CMI's yearly income under subdivision 3, while the Commissioner apportioned the entirety of CMI's yearly income under subdivision 3.

CMI appealed the Commissioner's assessment administratively. The Commissioner affirmed the assessment but removed the substantial understatement

6

penalty. Specifically, the Commissioner noted that CMI "reasonably relied on *Nadler* and the Department had issued no written guidance until 2017 (Revenue Notice 17-02) disputing the *Nadler* decision." Because "CMI appeared to act in good faith and had a reasonable cause for their position," the Commissioner determined that abatement of the penalty was warranted. *See* Minn. Stat. § 289A.60, subd. 4(e) (2022) (providing that the Commissioner of Revenue may abate all or part of a substantial understatement penalty "on a showing by the taxpayer that there was reasonable cause for the understatement, or part of it, and that the taxpayer acted in good faith").

CMI appealed the Commissioner's determination to the tax court, which affirmed the assessment on the parties' cross-motions for summary judgment. *Cities Mgmt., Inc. v. Comm'r of Revenue*, No. 9484-R, 2022 WL 17825925, at *1 (Minn. T.C. Dec. 20, 2022). Relying on our analysis of the unitary business principle in *YAM Special Holdings, Inc. v. Commissioner of Revenue*, 947 N.W.2d 438 (Minn. 2020), the tax court determined that CMI's income from the sale of its goodwill was business income of a unitary business. *Cities Mgmt.*, 2022 WL 17825925, at *7. Because the gain generated from the transaction was "business income of a unitary business," the tax court determined that "Minnesota may tax that income through apportionment." *Id.*

The tax court found unavailing CMI's argument that the Commissioner was bound by the *Nadler* decision, noting that intervening tax court cases had cast doubt on *Nadler*'s applicability to cases involving the unitary business principle and that CMI's case was resolved instead by *YAM Special Holdings*, 947 N.W.2d at 438. *Cities Mgmt.*, 2022 WL 17825925, at *9. The tax court also rejected CMI's argument that the Commissioner was

7

collaterally estopped from relitigating the legal issues in *Nadler*. *Cities Mgmt.*, 2022 WL 17825925, at *9–10. CMI now appeals the tax court's decision to this court.

## ANALYSIS

"We review a tax court's order granting summary judgment to determine whether the tax court 'erred in applying the law and whether any material facts are disputed.' " *Billion v. Comm'r of Revenue*, 827 N.W.2d 773, 777 (Minn. 2013) (quoting *Sanchez v. Comm'r of Revenue*, 770 N.W.2d 523, 525 (Minn. 2009)). The material facts here are undisputed. Therefore, "the only question before us is whether the tax court correctly applied Minnesota law." *Id.* "We review the tax court's conclusions of law and interpretation of statutes de novo." *Antonello v. Comm'r of Revenue*, 884 N.W.2d 640, 643 (Minn. 2016). We presume that the Commissioner's tax assessments are valid and correct, and the taxpayer has the burden of demonstrating the invalidity or incorrectness of an assessment. *YAM Special Holdings*, 947 N.W.2d at 441.

I.

We begin with CMI's argument that the Commissioner was bound by the tax court's interpretation of section 290.17 in *Nadler v. Commissioner of Revenue*, No. 7736 R, 2006 WL 1084260 (Minn. T.C. Apr. 21, 2006). Citing the tax court's jurisdictional statute, Minn. Stat. § 271.01, subd. 5 (2022), CMI contends that the Commissioner is bound by unappealed tax court decisions that interpret Minnesota tax law. Because the *Nadler* decision was not appealed, CMI asserts that the Commissioner was bound to follow the tax court's interpretation of section 290.17 in *Nadler* and that—under that interpretation—the assessment against CMI is invalid.

8

The tax court's jurisdictional statute describes the authority of the tax court, in relevant part, as follows:

> Except for an appeal to the supreme court or any other appeal allowed under this subdivision, the Tax Court shall be the sole, exclusive, and final authority for the hearing and determination of all questions of law and fact arising under the tax laws of the state, as defined in this subdivision, in those cases that have been appealed to the Tax Court and in any case that has been transferred by the district court to the Tax Court.

Minn. Stat. § 271.01, subd. 5. CMI contends that this language—specifically the directive that "the Tax Court shall be the sole, exclusive, and final authority"—reflects the Legislature's intent to make the tax court's interpretation of Minnesota tax law binding on the Commissioner.

The Commissioner, however, argues that this language does not demonstrate legislative intent to make tax court decisions binding in subsequent cases but simply gives the tax court authority to decide each case before it completely. *See In re McCannel*, 301 N.W.2d 910, 920 (Minn. 1980) ("The language designating the tax court as the 'sole, exclusive, and final authority' for all issues raised in a particular case suggests that the legislature intended the tax court to have the power to decide each case completely."). Accordingly, the Commissioner argues that while he was required to respect the tax court's interpretation of section 290.17 in *Nadler* for resolving that particular appeal, section 271.01, subdivision 5, does not mandate that he follow *Nadler* with respect to CMI's audit and assessment.

We are troubled by the Commissioner's conduct that this case has brought to light. Rather than appealing the tax court's interpretation of tax law with which the Department

9

disagreed, the Commissioner decided internally—apparently without notice to the public—that the Department would "not acquiesce" to the tax court's interpretation of the law. We fear that such actions do little to inspire the trust and confidence of taxpayers in Minnesota's tax system. *See Mauer v. Comm'r of Revenue*, 829 N.W.2d 59, 76 n.2 (Minn. 2013) ("For taxpayers to have trust and confidence that Minnesota's tax system is fairly and equitably applied to all, it is vitally important that taxpayers be able to understand the Department's [position] . . . . Such an understanding is important so that taxpayers can adjust their expectations, intentions, and actions accordingly."). Still, we need not decide whether, as a matter of law, the Commissioner was bound by the *Nadler* decision to resolve this appeal.[7]

CMI's requested remedy—that the Commissioner's assessment be treated as invalid—is not possible based simply on a legal conclusion that the Commissioner was bound by the tax court's interpretation of section 290.17 in *Nadler*. Whether the Commissioner's assessment is valid depends on our interpretation of section 290.17. Even if the Commissioner was perhaps bound by *Nadler* and should have followed that interpretation of section 290.17, we are not bound by the tax court's statutory interpretation

---

[7] The dissent's frustration with the Commissioner's conduct is warranted. But we decline to use this case to create a new (and unrequested) equitable rule of law. The dissent's proposed rule would apply to future disputes between taxpayers and the Commissioner—with the potential for unintended consequences in other circumstances. We do not believe such a resolution is appropriate. At its core, this case concerns the issue of the correct interpretation of section 290.17. The parties presented and argued this issue, and our resolution of the issue does not depend on deference to the positions of the parties or the tax court. We choose to resolve the appeal on that ground.

10

in *Nadler* or any other case when determining whether the Commissioner's assessment was proper. *Kmart Corp. v. County of Stearns*, 710 N.W.2d 761, 770 (Minn. 2006) ("And, of course, decisions of the tax court have no binding effect on this court when we are ultimately called on to interpret a statute."). Accordingly, we decline to announce a bright-line rule about the binding nature of unappealed tax court decisions.[8]

## II.

We turn next to whether the tax court correctly determined that the gain on the sale of CMI's goodwill was subject to apportionment under subdivision 3 of Minn. Stat. § 290.17 when it affirmed the Commissioner's assessment. *Cities Mgmt.*, 2022 WL 17825925, at *7. Resolution of this issue presents a question of statutory interpretation, which we review de novo. *Antonello*, 884 N.W.2d at 643.

---

[8] CMI also argues that "the Commissioner should be barred by collateral estoppel from assessing additional tax on CMI" and asks that we conclude that the Commissioner is estopped from issuing the order that assessed additional tax. But this argument misses the mark.

One element of collateral estoppel requires that "the issue to be addressed is identical to an issue in a prior adjudication." *State Farm Mut. Auto. Ins. Co. v. Lennartson*, 872 N.W.2d 524, 534 (Minn. 2015). As to this element, we have stated that "[i]n tax cases, the matter in the second suit must be identical in all respects to that in the prior suit, and the controlling facts and legal principles must remain unchanged." *Care Inst., Inc.-Roseville v. County of Ramsey*, 612 N.W.2d 443, 448 (Minn. 2000). We agree with the tax court that the intervening tax court decision in *Aird v. Commissioner of Revenue*, Nos. 8301-R, 8302-R, 2012 WL 2945909 (Minn. T.C. July 16, 2012), arguably threw *Nadler*'s applicability here into doubt. Accordingly, because the controlling legal principles have not remained unchanged since *Nadler*, we conclude that the tax court did not err by determining that CMI failed to establish the first element of collateral estoppel.

Because it was not raised, we decline to consider whether a claim of *equitable* estoppel, rather than collateral estoppel, could have applied here. *See Kmart Corp.*, 710 N.W.2d at 771 (noting that "[a] governmental agency may be estopped from taking an enforcement action" if a party establishes a claim of equitable estoppel).

11

"On questions of statutory interpretation, our objective is to effectuate the Legislature's intent." *Hibbing Taconite Co. v. Comm'r of Revenue*, 958 N.W.2d 325, 329 (Minn. 2021). "The plain language of the statute is our best guide to the Legislature's intent." *Rodriguez v. State Farm Mut. Auto. Ins. Co.*, 931 N.W.2d 632, 634 (Minn. 2019). "The plain language of the statute controls when the meaning of the statute is unambiguous." *State v. Boecker*, 893 N.W.2d 348, 351 (Minn. 2017). But "[i]f the statutory language 'is subject to more than one reasonable interpretation,' it is ambiguous and we look to other interpretative tools to assist our inquiry into legislative intent." *Rodriguez*, 931 N.W.2d at 634 (quoting *State v. Riggs*, 865 N.W.2d 679, 682 (Minn. 2015)). We construe statutory words and phrases "according to rules of grammar and according to their common and approved usage." Minn. Stat. § 645.08(1) (2022).

We begin with the text of section 290.17. Subdivision 1 dictates the scope of the statute's allocation rules. These rules do not apply to "[t]he income of resident individuals." Minn. Stat. § 290.17, subd. 1(a). Rather, they apply to "nonresident individuals, estates, trusts, nonresident partners of partnerships, nonresident shareholders of corporations treated as 'S' corporations under section 290.9725, and all corporations not having such an election in effect." *Id.*

Subdivision 2 provides rules for assigning various types of "income of a taxpayer subject to the allocation rules that is not derived from the conduct of a trade or business." Minn. Stat. § 290.17, subd. 2. As is relevant to this dispute, paragraph (c) provides a rule for assigning gain on the sale of goodwill:

12

> Gain on the sale of goodwill or income from a covenant not to compete that is connected with a business operating all or partially in Minnesota is allocated to this state to the extent that the income from the business in the year preceding the year of sale was assignable to Minnesota under subdivision 3.

*Id.*, subd. 2(c).[9]

Subdivision 3 provides a general rule of apportioning trade or business income: "All income of a trade or business is subject to apportionment except nonbusiness income." Minn. Stat. § 290.17, subd. 3. The subdivision further provides, as relevant to this dispute, that "[i]ncome derived from carrying on a trade or business must be . . . apportioned between this state and other states and countries under this subdivision if conducted partly within and partly without this state." *Id.*

Subdivision 4 codifies the constitutional "unitary business principle." The subdivision defines "unitary business" to mean "business activities or operations which result in a flow of value between them." Minn. Stat. § 290.17, subd. 4(b). "The term may be applied within a single legal entity or between multiple entities and without regard to whether each entity is a sole proprietorship, a corporation, a partnership or a trust." *Id.* Under the unitary business principle, "[i]f a trade or business conducted wholly within [Minnesota] or partly within and partly without [Minnesota] is part of a unitary business, the entire income of the unitary business is subject to apportionment pursuant to section

---

[9] Although subdivision 2 generally focuses on "income not derived from the conduct of a trade or business," the goodwill provision in subdivision 2(c) specifically applies to gains on the sale of goodwill "*connected with* a business." Minn. Stat. § 290.17, subd. 2(c) (emphasis added). The statute does not clarify the distinction, if any, between income "derived from" and income "connected with" a business.

290.191." *Id.*, subd. 4(a). This subdivision further provides that "[n]otwithstanding subdivision 2, paragraph (c), none of the income of a unitary business is considered to be derived from any particular source and none may be allocated to a particular place except as provided by the applicable apportionment formula." *Id.*

Subdivision 6[10] defines "nonbusiness income"—the type of income that the statute explicitly exempts from apportionment:

> Nonbusiness income is income of the trade or business that cannot be apportioned by this state because of the United States Constitution or the Constitution of the state of Minnesota and includes income that cannot constitutionally be apportioned to this state because it is derived from a capital transaction that solely serves an investment function.

Minn. Stat. § 290.17, subd. 6. This section codifies constitutional principles that restrict a state's ability to apportion income. *See YAM Special Holdings*, 947 N.W.2d at 442 ("Under the Due Process Clause of the U.S. Constitution, a state may not impose an income tax on 'value earned outside its borders.' " (quoting *Container Corp. of Am. v. Franchise Tax Bd.*, 463 U.S. 159, 164 (1983))). Subdivision 6 directs that "[n]onbusiness income must be allocated under subdivision 2."

With this statutory framework in mind, we start with what is undisputed. The parties agree that the income of CMI attributable to Carlson falls within the scope of the allocation rules in section 290.17 because Carlson is a nonresident shareholder of CMI, a Minnesota S corporation. *See* Minn. Stat. § 290.17, subd. 1. Both parties characterize the income at issue as gain on the sale of CMI's goodwill, and they agree that CMI's goodwill was a

---

[10] Subdivision 5 provides a rule for assigning "income from the operation of an athletic team" in special circumstances and is not implicated here. Minn. Stat. § 290.17, subd. 5.

14

unitary asset. CMI makes no constitutional argument that the State's taxation of its income violates the Due Process Clause, nor does it assert that the income at issue is "nonbusiness income" under the constitutional principles in subdivision 6.

The parties' dispute boils down to which provision of section 290.17 governs the taxation of CMI's income. CMI contends that the allocation rules in subdivision 2 govern because the gain on the sale of CMI's goodwill is income that is "not derived from the conduct of a trade or business." Minn. Stat. § 290.17, subd. 2. In support of this characterization, CMI relies on three factors that we used in *Firstar Corp. v. Commissioner of Revenue*, 575 N.W.2d 835, 839–40 (Minn. 1998), to determine whether the income at issue in that case was business or nonbusiness income. The Commissioner, however, asserts that CMI's income is subject to apportionment because it is business income and derived from a unitary asset. *See* Minn. Stat. § 290.17, subds. 3–4.

The parties disagree on the meaning of the statement in subdivision 3 that "[a]ll income of a trade or business is subject to apportionment except nonbusiness income." Minn. Stat. § 290.17, subd. 3. The Commissioner contends that, as a result of this language, the statute creates a purely constitutional test for apportioning income. In other words, under the Commissioner's interpretation of the statute, the constitutional principles codified in the definition of "nonbusiness income," Minn. Stat. § 290.17, subd. 6, are the only limitations on the State's ability to apportion nonresidents' income. Under this interpretation, section 290.17 recognizes two types of income: (1) "business income," which is apportioned under subdivision 3, and (2) "nonbusiness income," as defined in subdivision 6, which is allocated under subdivision 2 and cannot be apportioned.

15

CMI disputes this interpretation, arguing that the words "subject to apportionment" in subdivision 3 connote a permissive meaning. Minn. Stat. § 290.17, subd. 3. Under its interpretation, all income of a trade or business that is not nonbusiness income *may* be apportioned under subdivision 3, but it is not necessarily the case that the statute *requires* apportionment. CMI contrasts this language with the direction in subdivision 6 that "[n]onbusiness income *must* be allocated under subdivision 2." Minn. Stat. § 290.17, subd. 6 (emphasis added).

CMI is correct that "subject to"—particularly when it is used as an adjective or adverb—often means something less certain than "must." *See Subject*, *Black's Law Dictionary* (11th ed. 2019) (defining the adjective form of "subject" to mean "[d]ependent on or exposed to (some contingency); esp. being under discretionary authority"). But "subject to" can also have a more mandatory meaning. *See Concise Oxford English Dictionary* 1435 (11th ed. rev. 2009) (defining the adjective form of "subject" to mean "dependent or conditional on" but also "under the control or authority of"). Although the first meaning bolsters CMI's interpretation, this second meaning of "subject to" would support the Commissioner's interpretation.

But CMI argues that we must adopt its interpretation of subdivision 3 in section 290.17 because the Commissioner's interpretation would render language in subdivision 2 superfluous. Under the Commissioner's interpretation, subdivision 2 and its allocation rules are invoked only when the income at issue falls within the definition of "nonbusiness income." CMI contends that this interpretation means that there would be no need for the directive in subdivision 2 that "[t]he income of a taxpayer subject to the allocation rules

16

that is not derived from the conduct of a trade or business must be assigned in accordance with [this subdivision]." Minn. Stat. § 290.17, subd. 2. Moreover, CMI argues, the Commissioner's interpretation would render the specific goodwill provision in subdivision 2(c) meaningless because, it contends, goodwill is always a unitary asset of the entity selling it and therefore goodwill cannot constitute "nonbusiness income" because it is constitutional to apportion income from a unitary asset.

But we are unconvinced by this argument. CMI essentially asks us to interpret the statute in a way to exempt goodwill from the unitary business principle in subdivision 4. This provision states that "the *entire income* of [a] unitary business is subject to apportionment." Minn. Stat. § 290.17, subd. 4 (emphasis added). More specifically, subdivision 4 provides that "*[n]otwithstanding subdivision 2, paragraph (c)*, none of the income of a unitary business is considered to be derived from any particular source and *none may be allocated to a particular place except as provided by the applicable apportionment formula*." *Id.* (emphasis added). Subdivision 2(c) contains the rule assigning gain from the sale of goodwill—the rule that CMI argues governs. This goodwill provision suggests that when goodwill is a unitary asset, as it is here, it is not assigned under subdivision 2(c). CMI's interpretation of section 290.17—that goodwill, even when it is a unitary asset, is assigned under subdivision 2(c)—seems incongruous with this statutory language.

We acknowledge that section 290.17 is not a model of statutory clarity. Both parties' interpretations are supported by the statutory language, yet neither interpretation harmonizes all of the statute's provisions. Because the Legislature's intent is not clearly

17

ascertainable from the language of the statute, we conclude that the treatment of gain on the sale of goodwill under section 290.17 is ambiguous. Accordingly, we turn to other interpretive tools to determine the Legislature's intent related to the characterization and taxation of CMI's income under section 290.17.

One such tool that we may use when a statute is ambiguous is contemporaneous legislative history, Minn. Stat. § 645.16(7) (2022), which, in this case, provides compelling support for the Commissioner's interpretation of section 290.17. *See also* Minn. Stat. § 645.16(5) (allowing for consideration of "the former law" in determining legislative intent). The statement that "[a]ll income of a trade or business is subject to apportionment except nonbusiness income" was added to subdivision 3 in 1999 as part of an omnibus tax bill. Act of May 25, 1999, ch. 243, art. 2, § 21, 1999 Minn. Laws 2054, 2076. In the same act, the Legislature made significant changes to subdivision 6, which addressed nonbusiness income. Act of May 25, 1999, ch. 243, art. 2, § 23, 1999 Minn. Laws 2054, 2078. Prior to the 1999 amendment, subdivision 6 directed that "[f]or a trade or business for which allocation of income within and without this state is required, if the taxpayer has any income not connected with the trade or business carried on partly within and partly without this state[,] that income must be allocated under subdivision 2." Minn. Stat. § 290.17, subd. 6 (1998). The 1999 amendment replaced this provision with the definition that currently exists in the statute—one that defines "nonbusiness income" as income of a trade or business that cannot be constitutionally apportioned. Act of May 25, 1999, ch. 243, art. 2, § 23, 1999 Minn. Laws 2054, 2078. The Legislature also made changes to the

18

definition of "unitary business" in subdivision 4. Act of May 25, 1999, ch. 243, art. 2, § 22, 1999 Minn. Laws 2054, 2076–77.

After the omnibus tax bill was introduced in the Minnesota House of Representatives, it was referred to the Committee on Ways and Means, where the bill's author described the provisions amending section 290.17 as "a response to the *Firstar-Hercules* decisions." Hearing on H.F. 2420, H. Comm. Ways and Means, 81st Leg., Apr. 27, 1999 (audio tape) (comments of Rep. Abrams, house author of the bill). *Firstar* and *Hercules* were companion cases we decided in 1998 that addressed issues much like the one before us now: whether income subject to taxation under section 290.17 was apportionable business income. *Firstar Corp. v. Comm'r of Revenue*, 575 N.W.2d 835, 836 (Minn. 1998); *Hercules Inc. v. Comm'r of Revenue*, 575 N.W.2d 111, 112–13 (Minn. 1998). In both cases, the tax court had affirmed the Commissioner's determination that the taxpayer's income was subject to apportionment, and in both cases, we reversed. *Firstar*, 575 N.W.2d at 836; *Hercules*, 575 N.W.2d at 113.

The income at issue in *Firstar* was the capital gain that a bank holding company had realized from the sale of office property in Wisconsin. 575 N.W.2d at 836. In interpreting section 290.17, we noted that the Legislature had amended the statute in 1987 to remove any definition of "business income." 575 N.W.2d at 838. Still, we concluded that "the fact that Minn. Stat. § 290.17 still differentiates between the two types of income indicates the legislature's continuing intent to tax only that portion of a taxpayer's income generated from carrying on a trade or business." *Id.* Looking to other jurisdictions, we adopted a functional test for determining whether income constitutes business income, and we

19

identified three factors to consider in this analysis: "the frequency and regularity of similar transactions; former business practices; and subsequent use of the proceeds." *Id.* at 838–39. Applying those factors to the bank holding company's income, we concluded that the gain from the sale of the office property was nonbusiness income not subject to apportionment. *Id.* at 839–40.

In *Hercules*, we concluded that a corporation's capital gain realized from the sale of stock was nonbusiness income not subject to apportionment. 575 N.W.2d at 112–13. Our decision was based on statutory language then present in subdivision 6 of section 290.17, which stated that "[i]ntangible property is employed in a trade or business if the owner of the property holds it as a means of furthering the trade or business." Minn. Stat. § 290.17, subd. 6 (1996); *Hercules*, 575 N.W.2d at 114–15. We reasoned that the gain from the sale of stock was not business income because neither the taxpayer's holding of the stock nor the gain realized from the sale of the stock was used in the taxpayer's day-to-day business operations. 575 N.W.2d at 115–16. We thus concluded that the statute did not authorize apportionment of the taxpayer's income from the stock sale. *Id.* at 116.

In short, in both cases, we adopted more exacting standards for income to constitute apportionable business income under section 290.17 than what the Commissioner and tax court had used to evaluate the income of multistate businesses. That the 1999 amendment modifying the statute's definition of nonbusiness income was introduced as a response to these decisions suggests that the Legislature intended to change our interpretation of the divide between business and nonbusiness income in section 290.17.

But CMI argues that the functional test articulated in *Firstar* remains intact, citing a proposed amendment to subdivision 3 of section 290.17, which the Legislature rejected in favor of the 1999 amendment. The language that CMI identifies was included in the Minnesota Senate's omnibus tax bill and would have amended subdivision 3, in part, as follows:

> All income of a unitary business is subject to apportionment except nonbusiness income. Income derived from ~~carrying on a trade or~~ a unitary business must be assigned to this state if the ~~trade or~~ unitary business is conducted wholly within this state, assigned outside this state if conducted wholly without this state and apportioned between this state and other states and countries under this subdivision if conducted partly within and partly without this state.

S.F. 1276, art. 2, § 9, 81st Minn. Leg. 1999; *see also* 2 Journal of the Senate 2078–79 (81st Minn. Leg. Apr. 30, 1999) (amending H.F. 2420 so as to replace its language with the language in S.F. 1276).

CMI contends that the Legislature, by rejecting this language, did not overrule the *Firstar* transactional test because the Legislature left intact the language that the *Firstar* test described— the directives that "income of a taxpayer subject to the allocation rules that is not derived from the conduct of a trade or business must be assigned," Minn. Stat. § 290.17, subd. 2, and that "[i]ncome derived from carrying on a trade or business" must be apportioned if conducted partly inside and partly outside the state, *id.*, subd. 3.

But CMI ascribes too much meaning to the Legislature's decision to adopt the language of the house bill rather than the senate's proposed amendment. At the conference committee formed to resolve the differences between the two omnibus bills, legislators acknowledged that both bills had the same goal: to expand the State's ability to tax

21

multistate businesses' income through apportionment. The conference committee's discussion of the bill makes clear that the amendment to section 290.17 was intended to fix a perceived problem with our decisions in *Firstar* and *Hercules*— that because of our interpretation of business and nonbusiness income in those cases, out-of-state taxpayers were paying less income tax and Minnesota-domiciled taxpayers were paying more. Hearing on H.F. 2420 Conf. Comm., 81st Leg., May 11, 1999 (audio tape). Amending the statute to provide for full constitutional apportionment was the proposed solution, and the Legislature's revisions to the definition of "unitary business" were intended merely to bring those provisions in conformity with U.S. Supreme Court decisions that had been decided after the definition was added to section 290.17. Hearing on H.F. 2420 Conf. Comm., 81st Leg., May 11, 1999 (audio tape). This legislative history reflects the Legislature's intent to overrule *Firstar*'s functional test and put in place a purely constitutional distinction between business and nonbusiness income.[11] We therefore conclude that the Commissioner's interpretation of section 290.17 is the more reasonable interpretation.

Therefore, CMI's income, which derives from a unitary asset, does not constitute "nonbusiness income" under Minn. Stat. § 290.17, subd. 6, and may be constitutionally apportioned as business income. As a result, the allocation rules in subdivision 2 do not apply. Instead, this business income is subject to apportionment by the State of Minnesota.

---

[11] Because legislative intent is ascertainable from the canons of statutory construction, we need not resolve the statutory ambiguity in favor of CMI, the taxpayer. *See Marks v. Comm'r of Revenue*, 875 N.W.2d 321, 328 (Minn. 2016) (concluding that the principle of construction that ambiguity is resolved in favor of taxpayers does not apply when, "after applying the statutory canons, the intent of the Legislature is not in doubt").

*See* Minn. Stat. § 290.17, subds. 3–4. Because CMI's income is "derived from carrying on a trade or business . . . conducted partly within and partly without this state," it must be apportioned between Minnesota and other states. *Id.*, subd. 3. Accordingly, we affirm the decision of the tax court.[12]

## CONCLUSION

For the foregoing reasons, we affirm the decision of the tax court.

Affirmed.

PROCACCINI, J., not having been a member of this court at the time of submission, took no part in the consideration or decision of this case.

---

[12] Because we conclude that CMI's income is apportionable business income, we need not address CMI's argument about the amount of gain that would be allocated to Minnesota under Minn. Stat. § 290.17, subd. 2(c).

ANDERSON, Justice (dissenting).

As a legal matter, this appeal concerns the issue of whether a nonresident's income is subject to apportionment under Minn. Stat. § 290.17 (2014). But the actions of the Commissioner of Revenue here—namely, the decision to disregard the tax court's interpretation of a statute and adopt the Commissioner's own interpretation without notice to the public—raise serious concerns about the fundamental fairness of the underlying audit that led to this appeal. The court recognizes the problematic conduct of the Commissioner, but because the court elects not to provide a remedy, I respectfully dissent.

The court accurately sets out the undisputed facts here. Based on the tax court's holding in *Nadler v. Commissioner of Revenue*, No. 7736 R, 2006 WL 1084260 (Minn. T.C. Apr. 21, 2006), the majority shareholder, Kim Carlson, along with the co-owner of Cities Management, Inc. (CMI) agreed to sell the business on certain terms and also relied on *Nadler* in characterizing income from the sale of the business in preparing and filing the 2015 tax return.

At no point during any of these events were Carlson and her tax advisors aware that the Commissioner had rejected the tax court's interpretation of section 290.17 in the *Nadler* opinion. As the record produced during discovery demonstrates, the Commissioner decided within a year of the tax court's issuance of *Nadler* that the Department of Revenue would not accept the tax court's interpretation of section 290.17. For instance, a technical advice memorandum dated May 4, 2007, noted that "the Department of Revenue decided not to appeal the Tax Court decision in *Nadler v. Comm'r of Revenue* . . . but does not

acquiesce to that decision regarding the treatment of goodwill under Minn. Stat. § 290.17 in that case." Other documents lay out the Department's instructions to its employees to apply the Commissioner's own interpretation of section 290.17 rather than the *Nadler* interpretation of the statute.

But what is perhaps most troubling about this conduct is the Commissioner's lack of transparency. For more than 10 years after the *Nadler* opinion was issued, the Commissioner did not make public the Department of Revenue's position on the interpretation of section 290.17. Public notice of the Commissioner's disagreement was not provided until July 2017 when the Department issued Revenue Notice 17-02. In this revenue notice, the Commissioner publicly advised taxpayers for the first time that "the department does not administer the income allocation provisions in [section 290.17] using the Minnesota Tax Court's reasoning in *Nadler v. Commissioner*." Minn. Dep't of Revenue Notice No. 17-02 (July 3, 2017).

This revenue notice was, of course, no use to CMI; the business was sold and the 2015 tax return was filed relying on *Nadler* before the Commissioner issued the revenue notice. The Department itself acknowledged the basic unfairness of this situation when CMI administratively appealed the audit. In removing the substantial understatement penalty initially assessed against CMI, the Department noted that CMI "reasonably relied on *Nadler* and the Department had issued no written guidance until 2017 (Revenue Notice 17-02) disputing the *Nadler* decision."

On appeal to our court, CMI argues that the Commissioner should be bound by tax court decisions that are not appealed, including *Nadler*, in subsequent audits and

assessments. The Commissioner disagrees, arguing that tax court decisions are final and binding in particular cases but that these decisions are not precedential. In other words, the Commissioner contends that tax court opinions cannot be "binding" on parties in subsequent cases because tax court opinions are not binding on the tax court itself.

That issue need not be resolved here.[1] Given the outrageous conduct of the Commissioner, I would instead announce an equitable rule that the Commissioner is bound by tax court decisions that are not appealed unless the Department of Revenue provides public notice of its disagreement with the tax court opinion.[2] It is vital that taxpayers "have trust and confidence that Minnesota's tax system is fairly and equitably applied to all." *Mauer v. Comm'r of Revenue*, 829 N.W.2d 59, 76 n.2 (Minn. 2013); *see also State v. Melde*, 725 N.W.2d 99, 102 (Minn. 2006) ("Essential to the guarantee of due process is fundamental fairness."). But how are we to expect taxpayers to have confidence in a system in which the Commissioner ignores the tax court's interpretation of tax statutes and

---

[1]    The tax court is a creation of the Legislature with no constitutional authority and is an "administrative agency within the executive branch." *Kmart Corp. v. County of Stearns*, 710 N.W.2d 761, 769 (Minn. 2006). Although we have tangentially addressed the issue of the precedential effect of tax court opinions, we have not directly answered the question of whether, and to what extent, a tax court decision has precedential status. *See, e.g.*, *id.* at 769–70; *Sprint Spectrum LP v. Comm'r of Revenue*, 676 N.W.2d 656, 661 (Minn. 2004).

[2]    As the court properly notes in its opinion, CMI did not request equitable relief in its appeal to our court. However, we have previously considered whether equitable relief is warranted in tax cases even when the taxpayer did not request such relief. *See Kmart Corp.*, 710 N.W.2d at 771–72 (considering, but ultimately rejecting, relief based on equitable estoppel even when the taxpayer did not raise the doctrine). The failure of CMI to request equitable relief may have been because this remedy for government misconduct is rarely granted; here, given the decision of the Commissioner to disregard, without notice to the public, a directly on-point tax court decision, equitable relief is appropriate, regardless of whether it was raised earlier in the dispute.

unilaterally adopts the Commissioner's preferred interpretation of the law—all without notice to the public?  Simply put, taxpayers deserve some assurance that if they prepare their tax returns in reliance on the tax court's interpretation of the law, the Commissioner cannot subsequently change the rules, or at least not without notice to the public.

Applying this equitable rule to the circumstances before us, it is clear that the Commissioner is bound by the tax court's interpretation of section 290.17 in *Nadler*.  The tax court issued its opinion for *Nadler* in 2006, and although the Commissioner disagreed with the tax court's interpretation of section 290.17, no appeal was taken.  The Commissioner did not give public notice of disagreement with *Nadler* until 2017, when Revenue Notice 17-02 was issued.  CMI filed the tax return underlying this appeal in 2016—before the Commissioner gave public notice.  I conclude that the Commissioner is bound by the *Nadler* interpretation of section 290.17 for the purposes of this appeal.  There is no dispute that CMI accurately applied the *Nadler* interpretation when it concluded that gain on the sale of goodwill was subject to taxation under Minn. Stat. § 290.17, subd. 2(c).  Accordingly, I would reverse the decision of the tax court and remand for the tax court to vacate the Commissioner's assessment.


HUDSON, Chief Justice (dissenting).

I join in the dissent of Justice Anderson.